As a matter of the University of Illinois v. Workers' Compensation Commission, 4100809. Counsel, please. May it please the court, counsel, my name is John Skourmanis and I represent the University of Illinois in this case. In this case we are pretending that the facts are undisputed, that this matter should be reviewed de novo as a matter of law, as it applies to the extension of the natural consequences doctrine. The facts of this case are the petitioner injured his left arm at work. He left work in January of 2007. He first complained about right arm pain, that's the other arm, in March of 2007. He first sought treatment in May of 2007. I think it's, the center point to this whole case is that no time during which the petitioner worked for the University of Illinois did he complain or treat or develop right arm pain. All this was done, all the pain to the right arm, the overuse claim was done during a time that he was at home, no longer working for the University. In this situation there was nothing that benefited his employer, it was purely personal risk. The natural consequences, the University contends, should not extend that far. What do you do with Dr. Chen and Dr. Bain's notes that he compensated for his left shoulder injury and therefore aggravated his right shoulder? Dr. Bain's opinion in this record assumes that he was overcompensating at work. Dr. Chen's opinion takes into consideration the petitioner's activity while he was not at work, and that's when the overcompensation took place. I think if you look at the hypothetical, it was asked that the doctor assume that he was doing laundry, grocery shopping, but he was using the other arm, the right arm. But it's our contention because this was not at work, the natural consequences. Well it has to be at work. I'm sorry? It would have to be at work if his original injury was not permanent. His original injury was work related. So why does the use then of his other arm have to be at work? That doesn't make sense. If I'm injured at work in my left arm, and because of that injury I am forced to compensate, be it work or not at work, by overuse of my right arm, why is not my injury of my right arm work related? Because it has nothing to do with your employment. Certainly it does. It was caused by the injury to my left arm, which was work related. We have cases where we have a knee injury. That's right. And I think if you look, that's the Montgomery Manard case, and that's probably the closest case at hand, where one knee was compensable and then the other knee developed as a result of overuse. But I think if you look at the case itself, the petitioner in that case first reported pain to his other knee while he was working. The light duty was accommodated in that case, and in this case it was not. But if you have a medical opinion that can link the condition the person is suffering from to an injury that occurred at work on another appendage, why do you say that anything that has to be at work or has to be reported? We're not saying it has to be reported. Okay. We're saying it does have to have something related to work. And I understand your point is the original injury occurred at work. Right. And we're asking the court to draw a line for financial consequences. I think all the other cited cases, such as the Montgomery Manard case, the Caterpillar case, those cases either involve the same body part, such as the Caterpillar case had the scar tissue in the same hand, or it involves a case of overuse where there's light duty being accommodated. Okay. So you would say, let's make a more drastic case. Okay. Let's say that his arm is amputated in an accident, okay? Yeah. And he's no longer working at the factory, but in the everyday activities of life he's going to have to use obviously the only arm he has left. That's right. And if that arm then becomes impaired from normal use, you're saying that would not be compensable? That's the decision we take. Based on what logical, let alone legal principle, could you have that? Because in his example, the person loses their arm, they're never coming back to work anyway. Are they? Well, they're probably never coming back to work anyway. So how could they ever use their arm at work? And it's probably going to be covered by a permanent total or a non-line. But the question is, how would they ever use their arm again at work?  Well, in that case, if he's never coming back to work anyway, there would be other avenues to compensate the petitioner, such as a non-block permanent total. Wait a minute. What if he had to do some other job? Well, if he did some other job and was injured at the other job, then perhaps... Who would want to use injury at home? And that's where we're asking the court to draw the line. But do you have a single case that stands for that proposition? Where's the authority that stands by it? And it's an interesting theory. Do you have any case that supports that argument? Well, I don't know that there's any... I don't. We'd like to see it. On the flip side, I don't think there's any case where overuse occurred without any work activity. And the cases that are cited by the petitioner don't go to that proposition. And we're asking the court to consider what the petitioner would have to prove if this line is drawn this far out. They don't have to prove that the new injury happened at work as a result of trauma, that the injury happened at work as a result of repetitive or cumulative trauma, that the injury happened due to any activity connected to work, that the injury happened as a result of any active trauma at home or therapy or discernible time and place while treating for the compensable injury, that the use of the opposite extremity benefited the employer in any way, or that the petitioner's activities at home exposed them to any risk beyond that which the general public is exposed. Their case rests on risk that the general public is exposed, such as the laundry and day-to-day life activities. How do you get around that? I think the law is already fairly well settled. I think it's pretty well settled that every natural consequence that flows from an injury at work, likewise arises out of the employment unless it is the result of an independent intervening cause attributable to the claimant's conduct. Okay? I mean, isn't that the general rule? That's the natural consequence. Overuse of the other limb when somebody loses the use of the other limb is a natural consequence. What's the difference where the limb is being used at? We're just asking the court not to extend it that far because in all the cases, it's either the petitioner was working a light duty at the time or involved the same body part. And that's really the distinction we're asking the court to draw. And you have no authority to say we shouldn't? I don't think there's any authority for either proposition. Okay. Well, okay. Let's say there's nothing written on that. What's the policy that you think your view would promote? Well, that the petitioner has to prove a connection to the original injury or workplace and not that this activity was a result of day-to-day activity. I think if you look at the CISBRO case, it notes the injury must be a result of normal, degenerative process. That's aggravation of a pre-existing injury. That is, but I think, I guess I'm drawing the analogy, what's more normal than day-to-day life? And so I'm asking the court to draw that distinction. Unless there's any other questions, I'll reserve five minutes for rebuttal. Counsel, counsel, please. May it please this honorable court, Dr. J. Johnson, I represent Mr. Healy, the appellee in this matter, Mr. Maness. There was notice that the petitioner did injure his left arm moving a 40-pound box on January 18, 2007. Soon after that, his doctors, as part of the treatment, mobilized that left arm. As a result of the mobilization of the left arm, it forced Mr. Healy to use his right arm exclusively for all activities. Including activities of daily living. Not long after this mobilization took place, just a matter of months, by March of 2007, Mr. Healy began noticing pain in his right shoulder. He didn't see treatment for that until June of 2007. And Dr. Chen, an occupation medical specialist, documented this right shoulder pain. Dr. Chen noted that this came on gradually. He noted the petitioner felt that this was occurring as a result of the overcompensation due to the deficit on the left side. Dr. Chen diagnosed impingement syndrome. The left shoulder was operated on. The right shoulder pain continued. In fact, ultimately, right shoulder surgery was also performed. That was performed by Dr. Bain. What do you make of counsel's argument that if the claimant becomes symptomatic at home doing normal household activities, and connected to the work, he couldn't be penalized? Well, as the Caterpillar decision stands, for all natural consequences that flow from an accepted work-related injury are compensable as well. Whether it happens at home or at work? Whether it happens at home or at work, it's a natural consequence of the injury. Because of the work injury, Mr. Healy was forced to use only his right arm. This put additional stress on his right arm, when he couldn't use the left arm for any purpose whatsoever. The left arm was totally immobilized at that point. The testimony of Dr. Chen, an occupational medical specialist, clearly established that this use of the right hand only, the right arm only, aggravated the pre-existing condition in the petitioner's right shoulder, necessitating the need for treatment, and ultimately resulting in the surgery. This is a natural flow from that original work injury. I would argue that there was benefit to respondent as a result of this. The benefit to respondent is that petitioner was rehabbing to get himself back into work. This would be analogous, in my opinion, to injuries taking place in physical therapy, where an individual may be rehabbing in physical therapy for a back injury, and while doing so injures his knee. I think that the case law is clear in that situation that that type of scenario would be compensable. This is the same thing. Although their activity is daily living, Mr. Healy could only perform them with one hand. Most of the public has full use of both hands, and that is a distinction I think is important to note, and clearly important, in my opinion, and Dr. Chen's opinion, in leading to his conclusion that this natural consequence, the overuse of the right arm to compensate for the left arm, is what ended up with the need for this surgery to the right hand, and right arm, rather. I think this is consistent, as we stated in our brief, with the Fermi decision. In that decision, there was an initial ankle injury, and subsequently the petitioner fell while going to the bathroom and sustained a knee and thumb injury. Clearly, those are different body parts, but because of the weakened condition of the ankle, the petitioner fell, injuring the knee and the thumb. The two commission decisions that we cite, Montgomery, there was an initial injury to the right knee, and one and a half years later, the petitioner developed left knee pain, and the petitioner testified that it was due to his babying and overcompensating. That was one and a half years. Here we have just a matter of months that this had developed. Also, in the Keilhorn decision that we cite, there was a knee injury. Two years later, the petitioner was diagnosed with an annular tear. Based on a chain of events, the commission found that, as well as the medical opinions, that this is an acceleration of a pre-existing condition, clearly compensable with the natural consequence of the injuries. Like Fermi, Montgomery, and Keilhorn, we have a single compensable event. Mr. Healy suffered an injurious left arm that resulted in the need for treatment. Because of that treatment, he could not use that left arm. He used exclusively his right arm, and as a result of that exclusive use,  That's consistent with Dr. Chin's testimony of responsibility for the injury. The correspondent, Section 12 physician, does not comment on that. Simply states that he didn't see how Mr. Healy's work activities were causally related to any right shoulder injury. Based on that, we would request that the decision be affirmed. Thank you. Thank you. Thank you, counsel. Court will take the matter under guidance for disposition.